Filed 2/19/14  In re A.M. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>        Defendant and Appellant. | A138040<br><br>(Contra Costa County<br>Super. Ct. No. J12-01489) |

Following a combined motion to suppress evidence and jurisdictional hearing, the juvenile court sustained a petition alleging appellant possessed a weapon on school grounds.  Appellant contends the court erred in denying his suppression motion.  We disagree and affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  *Factual Background***

**1.  *Prosecution***

On October 22, 2012 at approximately 11:30 a.m., Andre Walker, a campus supervisor assigned to provide security and ensure classroom attendance at Antioch High School, was located at the front of the school.  At that time, he noticed appellant entering the campus.  Walker asked appellant why he was so late for an 11:00 a.m. class.  Appellant did not respond.  As appellant approached, Walker "picked up a scent of marijuana on him, and that's the time when I immediately asked him could he join me

into the vice principal's office [*sic*]." Walker took appellant to the vice-principal's office because he was late to school, smelled of marijuana, and to determine if he had on him any "drug substance."

In the office of the vice-principal, Jarrod Bordi, the vice-principal also noticed the odor of marijuana emanating from appellant. Nonetheless, when Walker asked appellant if he possessed anything they "should be aware of," appellant responded he did not. Appellant admitted, however, he had smoked marijuana off campus.

Because appellant smelled of marijuana, Bordi assumed he possessed marijuana or paraphernalia, and he authorized Walker to search appellant. Walker in turn conducted a pat search, felt an object, and removed a knife from appellant's front pocket. According to Bordi, the knife had blades "coming out of it at both ends." Appellant told Bordi he found the knife off campus and carried it for protection. Following the discovery of the knife and appellant's admission, Bordi informed him he was under suspension, and called the police.

Antioch Police Office Christopher Kidd was dispatched to the high school where he met with Bordi. Bordi gave him a knife taken from appellant. The knife had "dual blades on each side" that locked into position. After being advised of his *Miranda* rights,[1] appellant said he found the knife about three or four days previously, and carried it for protection.

### 2. *Defense*

Appellant testified he was searched by Timothy Manly, site safety coordinator for Antioch High School, in front of the school near the parking lot. Appellant denied he was ever searched by Walker in the vice-principal's office, but indicated Walker was present when Manly searched him.

Officer Kidd testified that when he arrived at the vice-principal's office, Bordi told him Manly had contacted him to advise that a student was in possession of a knife. Kidd was "under the impression that he [the vice-principal] was just contacted" by Manly and

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

had not actually witnessed the search.  Officer Kidd, however, did not speak to Manly about the search.  According to Kidd, while he was present, Bordi used a walkie-talkie device and contacted Manly who described the circumstances of the search.

### 3. *Rebuttal*

Safety Coordinator Manly testified that he had no contact with and did not search appellant on October 22, 2012, or at any other time.[2]  He also did not remember speaking with Officer Kidd on October 22, 2012, nor talking to Bordi over the radio about the search of appellant.

## B. *Procedural Background*

On October 24, 2012, a Welfare and Institutions Code section 602 petition was filed alleging appellant committed a misdemeanor, possession of a knife on school grounds.  (Pen. Code, § 626.10, subd. (a).)  Thereafter, appellant filed a motion to suppress evidence.  (Welf. & Inst. Code, § 700.1.)  Following a combined suppression/jurisdictional hearing on February 21, 2013, the court found Walker, Manly, and Bordi gave credible testimony, but did not "necessarily find" appellant gave credible testimony.  It denied the suppression motion, sustained the petition, and declared appellant a ward of the court.  Appellant was placed on probation subject to various terms and conditions.

## II.  DISCUSSION

Appellant contends the court erroneously denied his motion to suppress because the court's factual finding that school officials had a reasonable suspicion to search was not supported by substantial evidence and the search was unreasonable even if school officials smelled marijuana.

"The standard of review of a trial court's ruling on a motion to suppress is well established and is equally applicable to juvenile court proceedings."  (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)  " 'On appeal from the denial of a suppression

---

[2] Walker testified that after he searched appellant, he left the vice-principal's office and passed Manly, who was about to enter.  Bordi recalled that Manly entered the vice-principal's office after the knife was discovered.

3

motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.] We must uphold those express or implied findings of fact by the trial court which are supported by substantial evidence and independently determine whether the facts support the court's legal conclusions.' " (*In re William V.* (2003) 111 Cal.App.4th 1464, 1468.)

We begin by setting forth the general legal principles that govern searches and seizures of students. The Fourth Amendment[3] protects students on a public school campus against unreasonable searches and seizures. (*In re Randy G.* (2001) 26 Cal.4th 556, 566; *In re William G.* (1985) 40 Cal.3d 550, 561.) The school setting, however, " 'requires some modification of the level of suspicion of illicit activity needed to justify a search.' " (*Safford Unified Sch. Dist. # 1 v. Redding* (2009) 557 U.S. 364, 370.) Greater flexibility is required in applying the principles of the Fourth Amendment to searches of a student because teachers' and administrations' substantial interests in maintaining discipline in the classroom and on school grounds must be balanced against the student's interest in privacy. (*New Jersey v. T.L.O.* (1985) 469 U.S. 325, 339 (*T.L.O.*).) "[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." (*Id.* at p. 341.)

The reasonableness of a search under this standard generally depends on (1) whether the search was justified at its inception; and (2) whether the scope of the search, as actually conducted, was reasonably related to the circumstances justifying the initial search. (*T.L.O.*, *supra*, 469 U.S. at p. 341.) Ordinarily, a search of a student by a school official will be justified at its inception when there are reasonable grounds for

---

[3] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches . . . ." (U.S. Const., 4th Amend.) This guarantee has been incorporated into the Fourteenth Amendment, and is applicable to states. (*Mapp v. Ohio* (1961) 367 U.S. 643, 655.) The state Constitution contains a similar guarantee against unreasonable government searches (Cal. Const., art. I, § 13); but, since voter approval of Proposition 8 in June 1982, state and federal claims relating to exclusion of evidence on grounds of unreasonable searches are measured by the same standard. (*In re Lance W.* (1985) 37 Cal.3d 873, 886–887.)

4

suspecting the search will disclose evidence the student has violated or is violating the law or school rules. (*Id.* at pp. 341–342.) To justify a search, "[t]here must be articulable facts supporting that reasonable suspicion. . . . Respect for privacy is the rule—a search is the exception." (*In re William G., supra*, 40 Cal.3d at p. 564.) "[T]his standard requires articulable facts, together with rational inferences from those facts, warranting an objectively reasonable suspicion that the student or students to be searched are violating or have violated a rule, regulation, or statute." (*Ibid*.) A search is permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in the context of the age and sex of the student. (*Ibid*.)

Applying the foregoing principles to the facts of this case, we reject appellant's contention the search was unreasonable. While appellant's truancy from class, standing alone is not a sufficiently reasonable basis for conducting a search of any kind (see *In re William G.*, *supra*, 40 Cal.3d at p. 566), as we shall explain, there was an additional fact, the odor of marijuana emanating from appellant, giving rise to reasonable suspicion.

We first address appellant's claim that substantial evidence does not support the court's factual finding that school officials had reasonable suspicion to search. As noted above, the court found Walker, Bordi, and Manly were credible witnesses, however, it did not "necessarily find" appellant credible. Appellant disputes the court's findings based on "material contradictions" among the three witnesses' testimony and with Officer Kidd's testimony, arguing we should view the trial court's findings with "skepticism." According to appellant, "[i]n addition to appellant's testimony that Manly[, not Walker,] searched him in the parking lot without consent and that Walker was present but did not speak to him, Manly contradicted the testimonies of Walker and Bordi by denying that he had any contact with appellant on the day of this incident, and by testifying that he does not think or is not sure if he was even working that day." He also focuses on Manly's testimony that he did not speak to Bordi over the radio in contradiction of Officer Kidd's testimony he recognized Manly's voice on Bordi's walkie-talkie, and Kidd's testimony Bordi had told him Manly contacted Bordi about a

5

student in possession a knife. Lastly, appellant claims Officer Kidd contradicted Walker's and Bordi's testimony when he testified Bordi did not witness the search.

We find no merit in appellant's contention that the court's credibility findings were not supported by substantial evidence. When a superior court rules on a motion to suppress it must first find the facts relating to the challenged search or seizure. In other words, "it must decide what the officer actually perceived, or knew, or believed, and what action he took in response." (*People v. Leyba* (1981) 29 Cal.3d 591, 596–597, superseded by statute on other grounds as stated in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223–1224.) These are traditional questions of fact, and Penal Code section 1538.5 vests the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, the power to judge the credibility of the witness, resolve conflicts in the testimony, weigh the evidence and draw factual inferences is vested in the trial court. " 'On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People v. Leyba*, at pp. 596–597.)

The trial court was also in the best position to determine the credibility of the witnesses. The court found Walker, Bordi, and Manly credible and appellant not "necessarily" credible. We see no abuse of discretion in the court's credibility findings. The discrepancies in Manly's testimony relate primarily to his uncertainty about his activity on the day of the incident and have no bearing on the credibility of Walker and Bordi. While appellant claims it was Manly, not Walker who searched him, the trial court evidently discredited appellant's testimony. The court also gave little if any weight to Officer Kidd's testimony he heard Manly's voice on the walkie-talkie or Kidd's hearsay testimony Bordi told him Manly contacted Bordi about a student in possession of a knife. This assessment was reasonable because Officer Kidd had no personal knowledge of who conducted the search, not having been present when the knife was discovered, and was only "under the impression" that Bordi did not witness the search. In the absence of a compelling circumstance which is not presented here, we are bound by the trial court's credibility determinations.

Equally without merit is appellant's contention that even if school officials smelled marijuana, they lacked reasonable suspicion to search him because Officer Kidd did not notice any objective symptoms of appellant being under the influence of marijuana and neither Walker nor Bordi observed "anything else suspicious" or "any kind of bulge."

Generally, the odor of marijuana emanating from a particular place provides cause to believe more is present. In *People v. Cook* (1975) 13 Cal.3d 663, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 and footnote 22, the Supreme Court rejected the defendant's contention that the odor of marijuana did not furnish probable cause to search a car. Relying on *People v. Gale* (1973) 9 Cal.3d 778, the court held "that a police officer having made a lawful entry into an automobile could rely on a strong aroma of fresh marijuana as giving him ' "probable cause to believe . . . that contraband may be present." ' " (*People v. Cook,* at p. 668; see also *People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059.) Here, both Walker and Bordi smelled the odor of marijuana emanating from appellant, who admitted he had been smoking marijuana earlier off campus. " 'It requires no perspicacious intellect to reason the person smoking one marijuana cigarette may well want another and will carry sufficient marijuana to satisfy his appetite of the moment.' " (*People v. Coleman* (1991) 229 Cal.App.3d 321, 327.) Clearly there was reasonable suspicion to believe appellant possessed more marijuana on his person. The search was reasonable.

### III.  DISPOSITION

The judgment is affirmed.

                                                  _____

                                                  Margulies, Acting P.J.

We concur:


_____
Banke, J.


_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.